IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD GRIGSBY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PRATT & WHITNEY AMERCON, INC., AMERCON INTERNATIONAL, INC., ALFRED MATTARESE, RANDY GRONDA, and JIM PUTIRA,**<br><br>**Defendants.** | : | **CIVIL NO. 1:CV-07-0785**<br><br>**JUDGE SYLVIA H. RAMBO** |

**MEMORANDUM**

Plaintiff Ronald Grigsby filed the instant complaint against his employer, Pratt & Whitney Amercon,[1] and his supervisors, individual defendants Alfred Mattarese ("Mattarese"), Randy Gronda ("Gronda"), and Jim Putira ("Putira"), alleging that they discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5 *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951, *et seq*. Before the court are two motions to dismiss. The first is a motion by Pratt & Whitney Amercon pursuant to Fed. R. Civ. P. 12(b)(6), challenging both the timeliness and the sufficiency of Plaintiff's complaint (Doc. 9). The second is brought by individual defendants Mattarese, Gronda, and Putira pursuant to Rule 12(b)(5) for failure to effect timely service, and Rule 12(b)(6) for failure to state a claim (Doc. 20.) For the reasons that follow, disposition of Pratt &

---

[1] The prior name of Pratt & Whitney Amercon was Amercon International, Inc., which is also named as a defendant in the complaint. In this opinion, the corporate defendants will be referred to collectively as "Pratt & Whitney Amercon."

Whitney Amercon's motion to dismiss will be denied in part and stayed in part until further order of this court. Additionally, the motion to dismiss by Mattarese, Gronda, and Putira will be granted in part, denied in part, and stayed in part.

## I. Background

### A. Facts

Plaintiff's complaint contains the following allegations, which are taken as true for the purposes of these motions to dismiss. Plaintiff alleges he was discriminated against on the basis of race while employed at Pratt & Whitney Amercon. Plaintiff, who is African-American, was hired as a machine operator by Pratt & Whitney Amercon in December 2001. In early August 2003, Plaintiff applied for, and was hired as a machine operator on the weekend shift. On October 17, a job notice was posted for a second-shift welder. Plaintiff, who had previous welding experience, applied for the job and was hired as a welder in late October 2003. He passed all three welding certifications. In November 2003, Putira, who is white, became welding supervisor. On December 3, 2003, Plaintiff was laid off from his welding position.

On July 20, 2004, Plaintiff was called back to Pratt & Whitney Amercon as a machine operator. When he returned, Plaintiff met with Gronda to ask why he was not called back as a welder. Gronda said that Plaintiff could go back to welding if there was an opportunity. Plaintiff later learned that in early May 2004, while he was on layoff, a job notice had been posted for a welding position in Building 2, which would report to Putira. Plaintiff alleges that although he was qualified for the position, he was neither notified about it nor hired to fill it. Instead,

Putira brought in four unqualified individuals, at least two of whom were white, to fill the vacancies. These individuals required training in welding and could not pass the welding certification tests.

In September 2004, Jim Hartman, a former Pratt & Whitney Amercon welder, was hired as a part-time welder without any job notice posted. In October 2004, Hartman, who is white, began working as a welder full-time, and continued to do so until his retirement during the summer of 2005. In September 2004 Plaintiff met with Gronda to request the opportunity to do his welding certification off-hours. Gronda told him that he was lucky to have his job on the machine line and that Plaintiff was not wanted in welding. Putira refused to permit Plaintiff to keep up his welding certification. Plaintiff alleges that he met with Mattarese, the President of Pratt & Whitney to discuss his frustration with not being hired as a welder or being permitted to certify as a welder. Although Pratt & Whitney Amercon had an "Open Door Policy" in place at the time, Mattarese told Plaintiff to let Gronda handle the situation. In December 2004, Gronda again told Plaintiff that the welding department did not want him.

On January 27, 2005, Putira told one of the welders that a third welder was needed. The next day, Bill Grant, the Director of Human Resources asked Plaintiff if he could do welding work for Putira. Plaintiff said he was interested in the position, but said that Gronda had indicated that Putira did not want Plaintiff to work for him. Plaintiff followed up with messages to both Grant and Mattarese expressing his interest in the position, but received no response. On February 10, 2005 a job notice for the position was posted. Plaintiff applied for the position, and was hired.

Plaintiff alleges that although he started work as a welder on the first shift on March 7, 2005, he was paid at the lower rate of a machine operator rather than that of a welder until the middle of April 2005. On March 7, 2005, the same day Plaintiff started work as a welder, Putira announced that an additional welder would be needed, and John Forry, a white male, would be brought in for the position. Forry was currently working as a machine operator and was not certified as a welder. Two days later, Putira asked Plaintiff to switch from the first to the third shift so that Forry could practice his welding certification. Plaintiff refused, citing his childcare obligations.

**B. Procedural History**

On May 13, 2005, Plaintiff's attorney sent a letter to the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination by Defendants. (Doc. 16 Ex. 1.) The letter stated that Plaintiff wished to file a charge of race discrimination, and requested that the charge be dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). Enclosed with the letter was a fourteen page statement of allegations of discrimination and employment history, and a number of EEOC forms completed and signed by Plaintiff, including an Allegation of Employment Discrimination Questionnaire, a Charge Information Questionnaire, a Witness Questionnaire, a Remedy Information Questionnaire, and the Dual File Form. Also included along with the letter were a number of exhibits, including affidavits from two witnesses to the alleged discrimination, notices for positions at issue in this case, and several other related documents. (*See* Doc. 16 Ex. 16.) Both the Allegations of Discrimination and the Remedy Information forms were signed by Plaintiff under penalty of perjury, and for each questionnaire

Plaintiff checked the box stating "I want to file a charge." (*Id.* Exs. 3, 4.) According to a U.S. Postal Service delivery confirmation submitted by Plaintiff, his letter was received by the EEOC on May 16, 2005. (*Id.* Ex. 7.)

On June 23, 2005, an EEOC investigator sent a letter to Plaintiff's attorney requesting that Plaintiff complete an "EEOC Charge of Discrimination Form" which the EEOC attached to Plaintiff's previously submitted Statement of Discrimination. (*Id.* Ex. 9.) According to the letter, completion of the form was necessary for the EEOC to formalize the charge. (*Id.*) On July 8, 2005, Plaintiff signed the formal charge of discrimination, which was stamped received by the EEOC in Philadelphia on July 15, 2005. (*Id.* Ex. 10.) On November 16, 2005, the PHRC sent a letter to Plaintiff acknowledging that his charge was dual-filed with the PHRC, and that it had waived the opportunity to investigate the complaint. (*Id.* Ex. 11.)

On March 27, 2006, the EEOC made a determination that there was reason to believe that a violation of Title VII had occurred, and announced that the EEOC would seek conciliation with the defendants. (*Id.* Ex. 12.) The conciliation efforts were unsuccessful, and on January 29, 2007, the EEOC mailed Plaintiff a Notice of Right to Sue.

On April 29, 2007, Plaintiff filed the instant complaint, seeking both actual and punitive damages, and injunctive relief. (*Id.*) Plaintiff requested waiver of service by Pratt & Whitney Amercon shortly after the complaint was filed. Pratt & Whitney Amercon waived service for itself, but refused to accept service on behalf of individual defendants Mattarese, Gronda, and Putira. Plaintiff has submitted an affidavit averring that since May 2007, he has attempted without

success to obtain the addresses of Mattarese and Putira, who were no longer employed by Pratt & Whitney Amercon. (Doc. 27 Ex. A ¶ 2.) Plaintiff requested their addresses from Pat Baughman, the Human Resource Manager for Pratt & Whitney Amercon, but she refused to provide them, citing privacy concerns. (*Id.* ¶ 3.) Throughout the summer, Plaintiff asked various Pratt & Whitney Amercon employees who were friends of Mattarese and Putira for their addresses, but the employees would not provide this information. (*Id.* ¶¶ 5, 6.) Finally, shortly before the 120 day deadline for service, Plaintiff learned from other employees where Mattarese and Putira had moved, and he obtained their addresses though directory assistance. On the week of the deadline for expiration of service, Plaintiff sent a request for waiver of service via certified mail to Mattarese and Putira. ( *Id.* ¶ 12.) Mattarese received the request for waiver of summons on August 27, 2007. (Doc. 26 Ex. 1.) Putira received the same request two days later on August 29, 2007. (*Id.* Ex. 2.) Neither Mattarese nor Putira returned the waiver, and to date neither has been personally served.

On July 23, 2007, Pratt & Whitney Amercon filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Doc. 9). Pratt & Whitney Amercon argues that many of Plaintiff's claims were untimely filed, and that Plaintiff failed to state a prima facie case of employment discrimination under Title VII and the PHRA. On September 11, 2007 individual defendants Mattarese, Gronda, and Putira filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), arguing that the Plaintiff failed to effect timely service and failed to state a claim (Doc. 20). For the reasons that follow, Pratt & Whitney Amercon's motion to dismiss (Doc. 9) will be denied in part and stayed in part, and the motion to dismiss

by the individual defendants (Doc. 20) will be granted in part, denied in part, and stayed in part.

## II. Discussion

Defendants seek dismissal of Plaintiff's complaint on two grounds: (1) Defendants Mattarese and Putira argue that Plaintiff failed to effectuate timely service of the summons and complaint upon them; and (2) all Defendants argue that the complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. These arguments will be addressed in turn.

### A. Service of Process

Under the Federal Rules of Civil Procedure, a plaintiff must serve the summons and complaint upon a defendant within 120 days of filing the complaint. Federal Rule of Civil Procedure 4(m) provides that,

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time;

As an alternative to personally serving the complaint and summons on a defendant, a plaintiff may effectuate service by requesting waiver of service pursuant to Rule 4(d). When a plaintiff requests waiver of service, the defendant has at least 30 days to respond to the request, and will be required to pay the costs of service if he refuses. However, a mere request for waiver of service does not constitute service for the purpose of Rule 4(m), and if the defendant refuses to waive service, the plaintiff is still required to provide actual notice in the form of personal service

within the requisite 120 days. *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 879-80 (3d Cir. 1987).

Where a plaintiff has shown good cause for failure to serve a defendant within the required time, a court must extend the time for service of process for an appropriate time. Fed. R. Civ. P. 4(m). However, where there has been no good cause for the delay, the court may dismiss the complaint without prejudice, or choose to extend the deadline for service. *Id.*; *see also Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). The test for good cause requires "at least as much as would be required to show excusable neglect." *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988). Excusable neglect may be demonstrated by a plaintiff's good faith and reasonable basis for failure to serve within the required time period. *Petrucelli*, 46 F.3d at 1097. In determining whether there was excusable neglect, relevant factors include:

> 1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure, 2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, 3) counsel's failure to provide for a readily foreseeable consequence, 4) a complete lack of diligence or 5) whether the inadvertence resulted despite counsel's substantial good faith efforts towards compliance.

*Dominic*, 841 F.2d at 517.

Here, Plaintiff failed to serve Mattarese and Putira within 120 days after the complaint was filed. Instead, in the last week of the period for service, Plaintiff sent both defendants a request for waiver of service of process, but did not attempt personal service of the summons and complaint. Mattarese received the request for waiver of service on August 27, 2007, on the 120th day after the complaint was filed, and Putira received it two days later, on the 122nd day. Neither defendant

returned the waiver, and Plaintiff did not attempt personal service or request an enlargement of time to attempt service pursuant to Fed. R. Civ. P. 6(b).

Plaintiff argues that he had good cause for failing to serve Mattarese and Putira within 120 days because he made a diligent effort to locate them but was unable to do so because they were no longer working for Pratt & Whitney Amercon and had moved out of state. Additionally, Plaintiff points to "the noncooperativeness of the corporate defendants in furnishing vital and necessary information regarding the last known and/or current addresses for Defendant Alfred Mattarese and/or Defendant Jim Putira. . ." (Doc. 27 at 5.)

Here there was no good cause for Plaintiff's failure to serve Putira and Mattarese within 120 days. Of the five factors cited in *Dominic*, the third (counsel's failure to provide for a readily foreseeable consequence) and first (whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure) are particularly relevant here. In this case, Plaintiff learned of the addresses of Putira and Mattarese in the last week of the 120 period, but instead of attempting service at that time or seeking an enlargement of time for filing from this court, Plaintiff's counsel chose to send a mere request for waiver of service. Because defendants are entitled to at least 30 days before they must respond to a request for waiver of service, *see* Fed. R. Civ. P. 4(d)(2)(F), it was entirely predictable that service would not be completed within the time required. At such a late stage, Plaintiff should have either attempted personal service of Putira and Mattarese or, if counsel anticipated difficulty in effecting personal service, Plaintiff should have sought an enlargement of time for service. Moreover, the refusal of the corporate defendants to divulge the whereabouts of their former employees does not

constitute good cause. Pratt & Whitney Amercon had no obligation to provide this information to Plaintiff.

Plaintiff has failed to demonstrate good cause for failure to serve Putira and Mattarese within 120 days as required by Rule 4(m). Although a court may choose to order that service be effectuated within a particular time even in the absence of good cause, the court finds that it would not be appropriate in this case given Plaintiff's lack of diligence in attempting service for Putira and Mattarese. Accordingly, Plaintiff's claims against defendants Putira and Mattarese are dismissed without prejudice for insufficient service pursuant to Rule 12(b)(5).

**B. Failure to state a claim**

Defendants argue that Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) for three reasons: (1) many of Plaintiff's claims were untimely filed with the EEOC; (2) Plaintiff failed to plead the elements of a Title VII claim with sufficient particularity; and (3) individual defendants may not be liable under Title VII. These arguments will be addressed in turn.

**1. Motion to Dismiss Standard**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case —some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, No. 06-2869, slip

op. at 12 (3d Cir. Feb. 5, 2008) (quotation omitted). "A situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Twombly*, 127 S. Ct. at 1965; *accord, e.g., Phillips*, No. 06-2869, slip op. at 11; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (The court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, _____U.S. _____, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, No. 06-2869, slip op. at 10, 15. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 127 S. Ct. at 1965, 1974; *Phillips*, No. 06-2869, slip op. at 17; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Caroll*, 495 F.3d 62, 66 (3d Cir. 2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of

the plaintiff's cause of action. *Twombly*, 127 S. Ct. at 1965, *quoted in Phillips*, No. 06-2869, slip op. at 17.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Id.* Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v.*

*Parker*, 363 F.3d 229, 236 (3d Cir. 2004). With this standard in mind, the court now turns to Defendants' arguments.

**2. Timeliness of Claims**

In their motions to dismiss, Defendants argue that many of Plaintiff's claims pursuant to Title VII and the PHRA concerning actions dating from December 3, 2003 until mid-April 2005, are time-barred. The timeliness of Plaintiff's claims under both statutes depends upon when a "charge" was filed.

To bring a Title VII claim in federal court in Pennsylvania, a charge of employment discrimination claim must be filed within 300 days of the alleged unlawful act when the claim is dual-filed with the PHRC. 29 U.S.C. § 2000e-5(e)(1). Although the EEOC has created an "EEOC Charge of Discrimination Form" neither the text of Title VII nor the accompanying EEOC regulations require the completion of the form in order to file a charge. Title VII requires only that "charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 29 U.S.C. § 2000e-5(b). The EEOC's regulations state that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. Verification is defined as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a); *see also Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260-61 (3d Cir. 2006) (holding that a charge was not properly verified when it was not signed under penalty of perjury). With respect to the contents of the charge, the EEOC regulations provide that:

> a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.

29 C.F.R. § 1601.12(b).

Additionally, the Third Circuit has imposed an intent test, holding that in order to constitute a charge, "notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983). In *Bihler*, the Third Circuit found that the plaintiff provided insufficient notice of intent to file a charge when he merely mailed to the EEOC a copy of a letter addressed to his employer which alleged age discrimination. *Id.*; *see also Michelson v. Exxon Research and Eng'g Co.*, 808 F.2d 1005, 1010-11 (3d Cir. 1987) (holding that a written record of plaintiff's telephone call to the EEOC indicating an interest in filing a charge was insufficient by itself to constitute a charge).

The Supreme Court is currently considering the issue of what is required to constitute a charge of discrimination to the EEOC. *See Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558 (2d Cir. 2006), *cert. granted*, 127 S. Ct. 2914 (June 4, 2007). In *Holowecki*, an Age Discrimination in Employment Act ("ADEA") case, the Second Circuit applied the intent test and held that an EEOC charge questionnaire and accompanying affidavit constituted a charge under the ADEA and its supporting regulations, because the plaintiff's submissions to the EEOC demonstrated her intent for the EEOC to investigate and attempt conciliation. *Holowecki*, 440 F.3d at 568. The Supreme Court granted certiorari on the question:

> Whether the Second Circuit erred in concluding, contrary to the law of several other circuits and implicating an issue this Court has examined but not yet decided, that an "intake questionnaire" submitted to the

> Equal Employment Opportunity Commission ("EEOC") may suffice for the charge of discrimination that must be submitted pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), even in the absence of evidence that the EEOC treated the form as a charge or the employee submitting the questionnaire reasonably believed it constituted a charge.

There are some significant differences between *Holowecki* and the facts at issue in this case: *Holowecki* involves an ADEA claim rather than Title VII and the defendants never received notice from the EEOC of the filing, so conciliation efforts were not attempted. Nevertheless, because this case concerns whether and under what circumstances the completion of an EEOC intake questionnaire is sufficient to constitute a charge, the prudent course is to stay decision on this issue until the Supreme Court issues an opinion in *Holowecki*. Because Plaintiff dual-filed her PHRA claim with both the EEOC and the PHRC at the same time, the timeliness of this claim also depends upon the outcome of the Supreme Court's decision in *Holowecki*. Accordingly, the court will stay disposition of these issues until further notice.

### 3. **Sufficiency of Plaintiff's Allegations**

Defendants also argue that Plaintiff's claim should be dismissed because he failed to state every element of a prima facie case for employment discrimination under the *McDonnell-Douglas* framework. Specifically, Defendants argue that Plaintiff has failed to identify any similarly situated individuals of a different race that received more favorable treatment than Plaintiff with respect to each of Plaintiff's allegations.

Under the liberal pleading requirements of Fed. R. Civ. P. 8(a)(2), a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to state a claim upon which relief may be

granted. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The Supreme Court has rejected a heightened pleading standard for civil rights cases in general, *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993), and employment discrimination cases in particular. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2006). In *Swierkiewicz*, the Supreme Court noted that "the prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510. The Court held that an employment discrimination complaint need not contain specific facts to establish a prima facie case under *McDonnell Douglas* framework, but need only provide fair notice of a plaintiff's claims. *Id.* at 512. In an employment discrimination case, a plaintiff is not required to identify specific individuals of a different race who have received more favorable treatment than the plaintiff. *Harold v. Barnhart*, 450 F. Supp. 2d 544, 561 (E.D. Pa. 2006).

Here, Plaintiff has sufficiently stated a claim of race discrimination under both Title VII and the PHRA. In his complaint, Plaintiff alleges that he was "discriminated against and suffered harassment in the areas of layoff and recall from layoff, employee development, placement, promotion, and compensation." (Doc. 1 ¶ 116.) For each allegation in the complaint, Plaintiff provided detailed factual allegations to support his claims. Altogether, Plaintiff's complaint provides Defendants with more than fair notice of the nature and factual basis for Plaintiff's claims of discrimination. This is all that Rule 8(a)(2) requires. Accordingly, Defendants' motions to dismiss for failure to state a claim with respect to the sufficiency of the allegations in Plaintiff's complaint will be denied.

### 4. Individual Liability Under Title VII

Individual Defendants Mattarese, Gronda, and Putira seek to dismiss all Title VII claims against them pursuant to Rule 12(b)(6). It is well settled that individual employees may not be found liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 183-84 (3d Cir. 1996). Accordingly, Plaintiff's remaining claim pursuant to Title VII against Gronda, an employee of Pratt & Whitney Amercon, will be dismissed. Because amendment would be futile, *see Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004), this claim is dismissed with prejudice.

## III. Conclusion

In accordance with the foregoing discussion, the motion to dismiss by corporate Defendant Pratt & Whitney Amercon (Doc. 9) will be denied in part, and stayed in part until further order of this court. Additionally, the motion to dismiss by Defendants Mattarese, Gronda, and Putira (Doc. 20) will be granted in part, denied in part, and stayed in part. An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated: February 19, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD GRIGSBY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PRATT & WHITNEY AMERCON, INC., AMERCON INTERNATIONAL, INC., ALFRED MATTARESE, RANDY GRONDA, and JIM PUTIRA,**<br><br>**Defendants.** | : | **CIVIL NO. 1:CV-07-0785**<br><br>**JUDGE SYLVIA H. RAMBO** |

**O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Disposition of the motion to dismiss by corporate Defendant Pratt & Whitney Amercon (Doc. 9) is **DENIED IN PART** and **STAYED IN PART UNTIL FURTHER ORDER.**

   a) Defendant's motion to dismiss for failure to state a claim with respect to the sufficiency of the allegations in Plaintiff's complaint is **DENIED**; and

   b) Disposition of Defendant's motion to dismiss with respect to the timeliness of Plaintiff's claims is **STAYED UNTIL FURTHER ORDER**.

2) The motion to dismiss by Defendants Alfred Mattarese, Randy Gronda, and Jim Putira (Doc. 20) is **GRANTED IN PART, DENIED IN PART**, and **STAYED IN PART**:

a) All claims against Alfred Mattarese and Jim Putira are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(5);

b) Disposition of Defendants' motion to dismiss with respect to the timeliness of Plaintiff's remaining claims against Randy Gronda is **STAYED UNTIL FURTHER ORDER**.

c) Defendants' motion to dismiss for failure to state a claim with respect to the sufficiency of the allegations in Plaintiff's complaint is **DENIED**; and

d) The Title VII claims against Alfred Mattarese, Randy Gronda, and Jim Putira are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6).

3) All case management deadlines in this case are **STAYED** pending the outcome of the Supreme Court's decision in *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558 (2d Cir. 2006), *cert. granted*, 127 S. Ct. 2914 (June 4, 2007).

s/Sylvia H. Rambo
United States District Judge

Dated: February 19, 2008.