IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD GRIGSBY,** | : | **CIVIL NO. 1:CV-07-0785** |
| **Plaintiff** | : | |
| | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| | : | |
| **PRATT & WHITNEY AMERCON,** | : | |
| **INC., AMERCON** | : | |
| **INTERNATIONAL, INC.,** | : | |
| **ALFRED MATTARESE, RANDY** | : | |
| **GRONDA, and JIM PUTIRA,** | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Before the court are motions to dismiss filed by Defendant Pratt &
Whitney Amercon (Doc. 9) and Defendant Randy Gronda (Doc. 20)[1] pursuant to
Fed. R. Civ. P. 12(b)(6) challenging the timeliness of Plaintiff Ronald Grigsby's
submission of Title VII and PHRA claims to the EEOC. This court stayed
disposition of the motions pending the outcome of *Fed. Exp. Corp. v. Holowecki*,
128 S.Ct. 1147 (2008). The case has now been decided, and the issue of timeliness
is ripe for disposition. For the reasons that follow, the motion will be granted in part
and denied in part.

## I.        Background

The facts and procedural posture were set forth in the court's prior
opinion (Doc. 33) and will be repeated here only insofar as they are relevant to the
issue of timeliness.

---

[1] Alfred Mattarese and Jim Putira were previously dismissed as Defendants pursuant to Fed.
R. Civ. P. 12(b)(5). (*See* Doc. 33.)

1.      **Facts**

Plaintiff's complaint contains the following allegations, which are taken as true for the purposes of these motions to dismiss.  Plaintiff alleges he was discriminated against on the basis of race while employed at Pratt & Whitney Amercon.  Plaintiff, who is African-American, was hired as a machine operator by Pratt & Whitney Amercon in December 2001.  In early August 2003, Plaintiff applied for, and was hired as a machine operator on the weekend shift.  On October 17, a job notice was posted for a second-shift welder.  Plaintiff, who had previous welding experience, applied for the job and was hired as a welder in late October 2003.  He passed all three welding certifications.  In November 2003, Putira, who is white, became welding supervisor.  On December 3, 2003, Plaintiff was laid off from his welding position.

On July 20, 2004, Plaintiff was called back to Pratt & Whitney Amercon as a machine operator.  When he returned, Plaintiff met with Gronda to ask why he was not called back as a welder.  Gronda said that Plaintiff could go back to welding if there was an opportunity.  Plaintiff later learned that in early May 2004, while he was on layoff, a job notice had been posted for a welding position in Building 2, which would report to Putira.  Plaintiff alleges that although he was qualified for the position, he was neither notified about it nor hired to fill it.  Instead, Putira brought in four unqualified individuals, at least two of whom were white, to fill the vacancies.  These individuals required training in welding and could not pass the welding certification tests.

In September 2004, Jim Hartman, a former Pratt & Whitney Amercon welder, was hired as a part-time welder without any job notice posted.  In October 2004, Hartman, who is white, began working as a welder full-time, and continued to do so until his retirement during the summer of 2005.  In September 2004 Plaintiff

met with Gronda to request the opportunity to do his welding certification off-hours. Gronda told him that he was lucky to have his job on the machine line and that Plaintiff was not wanted in welding.  Putira refused to permit Plaintiff to keep up his welding certification.  Plaintiff alleges that he met with Mattarese, the President of Pratt & Whitney to discuss his frustration with not being hired as a welder or being permitted to certify as a welder.  Although Pratt & Whitney Amercon had an "Open Door Policy" in place at the time, Mattarese told Plaintiff to let Gronda handle the situation.  In December 2004, Gronda again told Plaintiff that the welding department did not want him.

On January 27, 2005, Putira told one of the welders that a third welder was needed.  The next day, Bill Grant, the Director of Human Resources asked Plaintiff if he could do welding work for Putira.  Plaintiff said he was interested in the position, but said that Gronda had indicated that Putira did not want Plaintiff to work for him.  Plaintiff followed up with messages to both Grant and Mattarese expressing his interest in the position, but received no response.  On February 10, 2005 a job notice for the position was posted.  Plaintiff applied for the position, and was hired.

Plaintiff alleges that although he started work as a welder on the first shift on March 7, 2005, he was paid at the lower rate of a machine operator rather than that of a welder until the middle of April 2005.  On March 7, 2005, the same day Plaintiff started work as a welder, Putira announced that an additional welder would be needed, and John Forry, a white male, would be brought in for the position.  Forry was currently working as a machine operator and was not certified as a welder.  Two days later, Putira asked Plaintiff to switch from the first to the third shift so that Forry could practice his welding certification.  Plaintiff refused, citing his childcare obligations.

### B.   Procedural History

On May 13, 2005, Plaintiff's attorney sent a letter to the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination by Defendants.  (Doc. 16 Ex. 1.)  The letter stated that Plaintiff wished to file a charge of race discrimination, and requested that the charge be dual-filed with the Pennsylvania Human Relations Commission ("PHRC").  Enclosed with the letter was a fourteen page statement of allegations of discrimination and employment history, and a number of EEOC forms completed and signed by Plaintiff, including an Allegation of Employment Discrimination Questionnaire, a Charge Information Questionnaire, a Witness Questionnaire, a Remedy Information Questionnaire, and the Dual File Form.  Also included along with the letter were a number of exhibits, including affidavits from two witnesses to the alleged discrimination, notices for positions at issue in this case, and several other related documents.  (*See* Doc. 16 Ex. 16.)  Both the Allegations of Discrimination and the Remedy Information forms were signed by Plaintiff under penalty of perjury, and for each questionnaire Plaintiff checked the box stating "I want to file a charge."  (*Id.* Exs. 3, 4.)  According to a U.S. Postal Service delivery confirmation submitted by Plaintiff, his letter was received by the EEOC on May 16, 2005.  (*Id.* Ex. 7.)

On June 23, 2005, an EEOC investigator sent a letter to Plaintiff's attorney requesting that Plaintiff complete an "EEOC Charge of Discrimination Form" which the EEOC attached to Plaintiff's previously submitted Statement of Discrimination.  (*Id.* Ex. 9.)  According to the letter, completion of the form was necessary for the EEOC to formalize the charge.  (*Id.*)  On July 8, 2005, Plaintiff signed the formal charge of discrimination, which was stamped received by the EEOC in Philadelphia on July 15, 2005.  (*Id.* Ex. 10.)  On November 16, 2005, the PHRC sent a letter to Plaintiff acknowledging that his charge was dual-filed with the

PHRC, and that it had waived the opportunity to investigate the complaint. (*Id.* Ex. 11.)

On March 27, 2006, the EEOC made a determination that there was reason to believe that a violation of Title VII had occurred, and announced that the EEOC would seek conciliation with the defendants. (*Id.* Ex. 12.) The conciliation efforts were unsuccessful, and on January 29, 2007, the EEOC mailed Plaintiff a Notice of Right to Sue.

On April 29, 2007, Plaintiff filed the instant complaint, seeking both actual and punitive damages, and injunctive relief. (*Id.*) On July 23, 2007, Pratt & Whitney Amercon filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Doc. 9). On September 11, 2007 individual defendants Mattarese, Gronda, and Putira filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), arguing that the Plaintiff failed to effect timely service and failed to state a claim (Doc. 20). On February 19, 2008, the motions were granted in part, denied in part, and stayed in part. (Doc. 33.) Individual Defendants Mattarese and Putira were dismissed from the case because Plaintiff failed to effectuate proper and timely service and Plaintiff's Title VII claims against Gronda were dismissed. The court stayed disposition of Defendants' arguments concerning the timeliness of Plaintiff's filing with the EEOC pending the outcome of the Supreme Court's decision in *Holowecki*. For the reasons that follow, the motions will be granted in part and denied in part.

## II.        <u>Standard</u>

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . .

. claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, —
U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47
(1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case — some
complaints will require at least some factual allegations to make out a showing that
the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232
(3d Cir. 2008) (quotation omitted). "A situation may arise where, at some point, the
factual detail in a complaint is so undeveloped that it does not provide a defendant
the type of notice of claim which is contemplated by Rule 8." *Id.* A plaintiff must
provide "more than labels and conclusions" or "a formulaic recitation of the
elements of a cause of action" to show entitlement to relief. *Twombly*, 127 S. Ct. at
1965; *accord, e.g., Phillips*, 515 F.3d at 238-39; *Baraka v. McGreevey*, 481 F.3d
187, 195 (3d Cir. 2007) (The court is not "compelled to accept unsupported
conclusions and unwarranted inferences or a legal conclusion couched as a factual
allegation." (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347,
350 (3d Cir. 2005).

      A defendant may attack a complaint by a motion under Rule 12(b)(6)
for failure to state a claim upon which relief can be granted. In deciding a motion to
dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual
allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200
(2007), and all reasonable inferences permitted by the factual allegations, *Watson v.
Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most
favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).
*Accord Phillips*, 515 F.3d at 233. If the facts alleged are sufficient to "raise a right
to relief above the speculative level" such that the plaintiff's claim is "plausible on
its face," a complaint will survive a motion to dismiss. *Twombly*, 127 S. Ct. at 1965,
1974; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir.

2007); *Stevenson v. Caroll*, 495 F.3d 62, 66 (3d Cir. 2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Twombly*, 127 S. Ct. at 1965.

         "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Id.* Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.        Discussion

         Defendants argue that many of Plaintiff's claims pursuant to Title VII and the PHRA are time-barred. The timeliness of Plaintiff's claims under both

statutes depends upon when a "charge" was filed, a question addressed by the Supreme Court in *Holowecki*.

To bring a Title VII claim in federal court in Pennsylvania, a charge of employment discrimination claim must be filed within 300 days of the alleged unlawful act when the charge is dual-filed with the PHRC.  42 U.S.C. § 2000e-5(e)(1).  A PHRA claim must be filed within 180 days of alleged discrimination.  43 Pa. Cons. Stat. Ann. § 959(a), (h).  The EEOC and PHRC have a work-share arrangement under which a charge may be dual-filed with either agency, and each agency agrees to waive the right to initially review claims first filed with the other agency.  *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 925-26 (3d Cir. 1997).  Here, Plaintiff submitted his charge to the EEOC for dual-filing with the PHRA.  Thus the timeliness of his claims under both statutes depends on the sufficiency of Plaintiff's filing with the EEOC.

Title VII requires that "charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."  42 U.S.C. § 2000e-5(b).   The EEOC's regulations state that "[a] charge shall be in writing and signed and shall be verified."  29 C.F.R. § 1601.9.  Verification is defined as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury."  29 C.F.R. § 1601.3(a); *see also Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260-61 (3d Cir. 2006) (holding that a charge was not properly verified when it was not signed under penalty of perjury).  With respect to the contents of the charge, the EEOC regulations provide that:

> a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify

the parties, and to describe generally the action or practices complained of.

29 C.F.R. § 1601.12(b).

Additionally, the Third Circuit has imposed an intent test, holding that in order to constitute a charge, "notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983). In *Bihler*, the Third Circuit found that the plaintiff provided insufficient notice of intent to file a charge when he merely mailed to the EEOC a copy of a letter addressed to his employer which alleged age discrimination. *Id*.; *see also Michelson v. Exxon Research and Eng'g Co.*, 808 F.2d 1005, 1010-11 (3d Cir. 1987) (holding that a written record of plaintiff's telephone call to the EEOC indicating an interest in filing a charge was insufficient by itself to constitute a charge).

In *Holowecki*, the United States Supreme Court held that the employee's intake questionnaire to the EEOC could be considered a charge if the filing can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." 128 S.Ct. at 1157-58. *Holowecki* involved a claim of age discrimination under the ADEA. *Id*. at 1153. The employee in that case completed an EEOC intake questionnaire and attached a signed affidavit that further detailed the discriminatory practices. *Id*. The employer argued that the suit was barred because it had been filed beyond the time limit for such claims, and that the intake questionnaire could not be considered a charge unless the EEOC acted upon it. *Id*. at 1154. The Supreme Court disagreed, noting that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory

remedies." *Id*. at 1160.  The Court held that a filing can be construed as a charge if it contains all of the information required by statute and the filing demonstrates a manifest intent to activate the remedial machinery of the agency.  Id. at 1157-58. The manifest intent element of the Court's holding is in accord with the intent test currently in existence in the Third Circuit.  *See Bihler*, 710 F.2d at 99.

Here, Defendants argues that the Plaintiff's May 16, 2005 submission to the EEOC did not file a charge.  Instead, Defendants argue that a charge was not filed until July 15, 2005, the date the charge was "formalized" by the EEOC.  Thus, Defendant argues that all PHRA claims prior to January 16, 2005 and all EEOC claims prior to September 18, 2004 are time-barred.  The court does not agree.

Plaintiff's initial submission satisfied all requirements for a charge under the Title VII regulations and manifested Plaintiff's intent that a charge be filed.  On May 16, 2005, the EEOC received a number of documents from Plaintiff including forms entitled "Allegations of Employment Discrimination" and "Charge Information Questionnaire."  In compliance with the regulations, these forms were in writing, verified by Plaintiff under penalty of perjury, and they identified the parties charged with discrimination.  Additionally, Plaintiff attached a fourteen page statement detailing the allegations of discrimination, and clearly indicated his intent that the charge be dual-filed with the PHRC.  Thus, Plaintiff fulfilled the statutory requirements for the filing of a charge under 29 C.F.R. § 1601.12(b) on May 16, 2005.  Plaintiff's initial submission also manifested an intent that the EEOC "activate its machinery and remedial processes."  Plaintiff clearly and unambiguously indicated that he wanted to file a charge in his letter to the EEOC and in the forms he completed.  In summary, Plaintiff intended to activate the remedial process of the EEOC on May 16, 2005, notwithstanding the fact that a

"formal" charge of discrimination was not submitted until later requested by the EEOC.[2]

The court finds that Plaintiff filed a charge of discrimination on May 16, 2005.  Thus all PHRA claims prior to November 17, 2004 (180 days) and all EEOC claims prior to July 20, 2004 (300 days) are time barred; however Plaintiff's allegations of discrimination between those dates and the filing of the charge are timely.

**IV.**        **Conclusion**

In accordance with the foregoing discussion, the motions to dismiss by Defendants (Docs. 9, 20) will be granted with respect to all PHRA claims regarding events occurring before November 17, 2004 and all EEOC claims regarding events occurring before July 20, 2004.  The motions will be denied in all other respects. An appropriate order will issue.

_____

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  May 21, 2008.

_____

[2]Additionally, the fact that Plaintiff's Form 5 charge was filed with the EEOC after May 16, 2005 filing does not negate the effect of the May 16, 2005 filing.  "Postfiling conduct does not nullify an earlier, proper charge."  *Holowecki*, 128 S.Ct at 1160.  The determinative issue is whether the earlier filing "should be interpreted as a request for the agency to act."  *Id*.  This court has already determined that the May 16, 2005 filing is properly interpreted  as a request for the agency to act.  Therefore, May 16, 2005 is the date the charge was filed despite the filing of Plaintiff's perfected, formal charge on July 15, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD GRIGSBY,** | : | **CIVIL NO. 1:CV-07-0785** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **PRATT & WHITNEY AMERCON, INC., AMERCON INTERNATIONAL, INC., ALFRED MATTARESE, RANDY GRONDA, and JIM PUTIRA,** | : | |
| **Defendants** | : | |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) The motions to dismiss by Defendants Pratt & Whitney Amercon (Doc. 9) and Randy Gronda (Doc. 20) are **GRANTED IN PART** and **DENIED IN PART** as follows:

a) The motions are **GRANTED** with respect to all PHRA claims regarding events occurring before November 17, 2004 and all EEOC claims regarding events occurring before July 20, 2004.

b) In all other respects relating to timeliness, the motions are **DENIED**.

2)      The new case management deadlines are as follows:

| | |
|---|---|
| Jury Selection/Trial Date | January 5, 2009 @ 9:30 AM |
| Fact Discovery Deadline | August 15, 2008 |
| Dispositive Motions and Supporting Briefs | September 15, 2008 |
| Motions *in Limine* and Supporting Briefs | November 10, 2008 |
| Motions *in Limine* Response | November 20, 2008 |
| Motions *in Limine* Reply | November 28, 2008 |
| Pretrial Conference | December 18, 2008 @ 2:30 PM |
| Pretrial Memoranda, Proposed *Voir Dire* and Proposed Jury Instructions | December 11, 2008 by noon |

s/Sylvia H. Rambo
_____
SYLVIA H. RAMBO
United States District Judge

Dated:  May 21, 2008.